**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KAY CATLIN, | Case No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| DELUXE CORPORATION, | |
| Defendant. | |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Kay Catlin ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Deluxe Corporation, d/b/a Deluxe Check Printers, Incorporated ("Deluxe" or "Defendant"), and, based on personal knowledge as to her own actions and upon information and belief, based upon the investigation of counsel, as to the actions of Defendant, alleges as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this an action on her own behalf and on behalf of a putative Class of similarly situated consumers ("Class") who purchased checks from Defendant and were charged a "Shipping" or "Delivery" charge.  Plaintiff alleges that these charges violated the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1 *et seq.*, and the similar consumer protection statutes of other states because, in contravention of established ethical principles, they were not reasonably related to Defendant's costs of delivering or shipping the checks to consumers but instead greatly exceeded those costs.

2.      Plaintiff also alleges that, pursuant to the common law of Illinois and other states, Defendant was unjustly enriched by obtaining fees for shipping and delivery of checks that exceeded the costs of shipping and delivery of those checks and that she and similarly situated consumers are entitled to restitution.

## PARTIES

3.      Plaintiff is an Illinois citizen residing in St. Charles, Illinois.

4.      Defendant is a corporation incorporated in the State of Minnesota with its principal place of business at 3680 Victoria St. N., Shoreview, MN 55126.  Defendant is registered with the Missouri Secretary of State's office under the name, "Deluxe Check Printers, Incorporated."

## JURISDICTION AND VENUE

5.      This is a class action filed under Rule 23 of the Federal Rules of Civil Procedure on behalf of citizens of the State of Illinois and other states who bought checks from Deluxe and paid a Delivery charge.

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), which under the provisions of the Class Action Fairness Act explicitly provides for the original jurisdiction in the federal courts of any class action in which any member of the Plaintiff class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds the aggregate sum of $5,000,000, exclusive of interest and costs, unless the number of members of all proposed Plaintiff classes in the aggregate is less than 100.

7.      Plaintiff is a citizen of Illinois.  Defendant is a citizen of Minnesota.  Therefore, diversity of citizenship exists pursuant to 28 U.S.C. § 1332(d)(2)(A).

8.      The total claims of the individual Class Members are in excess of $5,000,000 in the aggregate, exclusive of interest and costs.

9.      The number of members of the Plaintiff Classes is at least 100.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

11.     This action is brought by Plaintiff on behalf of herself and a proposed class of Illinois residents and residents of other states who were charged excessive, deceptive, unfair and unethical fees for delivery of new and replacement checks by Defendant during the three-year period before the filing of this Petition for Illinois Class Members and the periods of the applicable statutes of limitations of other states for Class members in those states (the "Class Period").

12.     Under the brand name Deluxe, Defendant sold checks to account holders at various banks, including BMO Harris Bank in Chicago, Illinois.

13.     Customers could order checks from the bank and have the checks delivered to their homes or places of business.  A bill from Defendant for the checks and delivery would accompany the delivered checks.

14.     Defendant also operated a website with the address www.deluxe.com for the purpose of allowing consumers to order new or replacement checks.

15.     Consumers could access this website either directly or by being directed to it by their bank's website.

16.     For instance if an account holder at a bank attempted to order checks from the bank's website, he or she would be informed that they were leaving the bank's website and going to the website of Deluxe.

17.     When consumers ordered checks from Defendant, they were first presented with a page to select their check design, type of check (Duplicate or Single/Wallet), Font, and information to include on the check.  Once they had made those selections, they were quoted a price for the checks.   Then, after confirming that check order, they were then taken with a  page headed "Step 2 Shipping and Payment Information."  This was the second-to-last step in placing their order for new checks.  On this page, they were required to choose among three Delivery Methods,  and only then shown the shipping and deliver prices.  The prices in effect as of the filing of this Complaint are shown below:

A.     "Basic:  Standard Delivery":  $8.00.

B.     "Better:  Four-Day Express Delivery":  $32.45.

C.     "Best:  Checks Next Day":  $49.60

18.     Defendant told consumers to allow 14 calendar days for printing and delivery for "Basic:  Standard Delivery," 4 business days for printing and delivery in the case of "Better: Four-Day Express Delivery," and next business day if ordered before 10:30 AM CST for printing and delivery in the case of "Best:  Checks Next Day Express Delivery."

19.     The prices of these delivery methods bear no reasonable relationship to and, in fact, greatly exceed Defendant's costs incurred for delivery; they therefore contained improper and unethical profit for Defendant.

20.     At various times during the Class Period, Defendant charged different prices for these Delivery Methods, but these charges always greatly exceeded Defendant's costs incurred for delivery and contained improper and unethical profit for Defendant.

21.     As a basis of the above allegation that its shipping and delivery charges exceed Defendant's costs, Defendant maintains websites under other brand names besides Deluxe, such

4

as Checks Unlimited, Check Gallery, and others which share manufacturing facilities with Deluxe and provide the same delivery services as Deluxe but charge much less for delivery than Deluxe does.  *See* Deluxe Corporation 2011 SEC Form 10-K at 7, 8.

22.     For example, when consumers ordered checks from Defendant through the Checks Unlimited website, they were first quoted a price for the checks, and then required to choose among the following five Delivery Methods, with the prices listed below, along with a "handling fee" of $3.45 per box:

        A.     "Standard" (up to 10 business days):  $0.00

        B.     "UPS Trackable" (4-6 business days):  $8.95

        C.     "UPS Ground" (2-5 business days):  $10.95

        D.     "UPS 2-Day" (2 business day): $11.95

        E.     "UPS 1-Day" (1 business day): $19.95

23.     Thus, for standard delivery, Defendant charged only $3.45 per box (denominated as "handling") for standard U.S. Postal Service delivery on its Checks Unlimited website but $8.00 for the same delivery on its Deluxe website.  Similar discrepancies (but greater in dollar terms) applied to the faster delivery methods.

24.     There is no reasonable and ethical explanation for charging much more for shipping or delivery when the checks are ordered through Defendant's brand-name Deluxe rather than its other brands.  The only possible explanation is that Defendant's charges for shipping and delivery for brand-name Deluxe checks exceed Deluxe's costs by at least the amount by which these charges exceed shipping and delivery charges by Deluxe's discount websites.

25.     These excess shipping and delivery charges are unethical and in violation of public policy because it violates business ethics to charge more for shipping or delivery than a company's costs of shipping, postage and handling.

26.     The basis for the allegation that it is unethical to charge more for shipping or delivery than a company's costs of shipping, postage and handling comes, in part, from established ethical principles laid down by the Direct Marketing Association ("DMA"), the leading industry association for companies that, like Defendant, market directly to consumers. DMA has published principles of ethical business practices for such marketing activities.  Direct Marketing Association's Guidelines for Ethical Business Practices, revised May 2011.  ("DMA Ethical Guidelines").  *See* Ex. A - DMA Ethical Guideline, revised May 2011; Ex. B – DMA Ethical Guideline, revised January 2014

27.     These Ethical Guidelines "are intended to provide individuals and organizations involved in direct marketing in all media with generally accepted principles of conduct."  *Id.* at 2.  They "reflect DMA's long-standing policy of high levels of ethics and the responsibility of the Association, its members, and all marketers to maintain consumer and community relationships that are based on fair and ethical principles." *Id.* (emphasis added).

28.     In addition, DMA states that the Ethical Guidelines "are intended to be honored in light of their aims and principles.  All marketers should support the guidelines in spirit and not treat their provisions as obstacles to be circumvented by legal ingenuity." *Id.*

29.     DMA has also published a companion volume to its Ethical Guidelines called *Do the Right Thing:  A Companion to DMA's Guidelines for Ethical Business Practice* (Revised January 2009) ("*Do the Right Thing*").  Ex. C.  That volume is intended to "give[] direct

marketers advice on how to assure their business practices comply with" the Ethical Guidelines. *Do the Right Thing* at 2.

30.     Deluxe is well-familiar with the ethical principles set forth by DMA in the Ethical Guidelines and in *Do the Right Thing*. Deluxe's management employee, George Lawton, who is its "privacy officer, business risk & compliance," is the chair of the DMA Ethics Policy Committee.  That Committee is the body within DMA that is responsible for the DMA Ethical Guidelines and the companion volume, *Do the Right Thing*.

31.     The 2011 and 2014 editions of DMA Ethical Guidelines state:  "The Ethics Policy Committee revises the Guidelines as needed, and initiates programs and projects directed toward improved ethical awareness in the direct marketing arena."  Ex. A at 46; Ex. B at 51.

32.     When DMA announced the 2014 version of its Ethical Guidelines, it issued a press release that stated that its Ethics Policy Committee consists of members who "review and revise the Ethical Guidelines to ensure marketers follow the current best practices, rules and ethical standards."  Ex. D.

33.     In both the 2014 and 2011 editions of the DMA Ethical Guidelines, Article #11 states: "Postage, shipping or handling charges, if any, should bear a reasonable relationship to actual costs incurred."  Ex. A at 1; Ex. B at 12.

34.     With respect to Article #11, DMA's companion volume *Do the Right Thing* states:  "When figuring shipping and handling fees, it is important to reflect the costs as accurately as possible so that your customers or prospects are not likely to view these fees as a company 'profit center.'"  *Id.* at 12-13.

35.     In 2003, DMA issued guidance "to assist cataloguers and other direct marketers in establishing charges for shipping, handling, and other fulfillment costs."  http://www.

dmaresponsibility.org/cgi/disppressrelease?article=440++++++, Ex. E,  DMA stated that this new guidance "provides additional direction beyond article #11 of The DMA's Guidelines for Ethical Business Practice, which states: "Postage, shipping, or handling charges, if any, should bear a reasonable relationship to actual costs incurred."  *Id.*

36.     This guidance stated, "Companies should determine what costs will be covered, and substantiate their method …. Ideally, a fulfillment cost study should be done with the assistance of an impartial outside expert."  *Id.*

37.     The guidance also stated, "Exact charges should be disclosed clearly and conspicuously in advance of the order. … When ordering online, shoppers should receive shipping information early in the order path."  *Id.*

38.     The current version of DMA's guidance is displayed on its web page, "Guidance for Establishing and Substantiating Shipping and Handling Charges," http://thedma.org/wp-content/uploads/DMA_Guidance_for_Establishing_and_Substantiating_Shipping_and_Handling_Charges1.pdf, Ex. F, where it states:

> Some marketers take the position that so long as there is clear disclosure on how much the consumer pays in total for the shipped product, the amount the marketer charges for shipping and handling should not matter. There appears to be a trend by law enforcement agencies, however, to insist that a consumer who is charged shipping and handling costs should be paying a fee reasonably based on the marketer's cost. The latter position is consistent with existing DMA guidelines.

> \* \* \* \* \*

> Your goal should be not to charge consumers as a whole more than you pay in total.

39.     Defendant's Delivery charges for Deluxe checks violate the ethical principle described above because they are not reasonably related to Defendant's costs; to the contrary, they include profit and turn shipping and handling into a profit center.

40.     The statement by DMA regarding the trend among law enforcement agencies to insist that a consumer who is charged shipping and handling costs should be paying a fee reasonably based on the marketer's cost shows that the practice of charging more for shipping than a marketer's costs violates public policy.

41.     Moreover, because Deluxe's Mr. Lawton is chair of the committee that reviews and revises the Ethical Guidelines, Deluxe knows well that it is unethical to charge more for shipping or delivery than a company's costs of shipping or delivery.

42.     Since Deluxe's Mr. Lawton has been chair of the Ethics Policy Committee, he has been tasked with reviewing and revising the Ethical Guidelines as needed; however DMA has not revised the principle regarding delivery or shipping cost out of the Guidelines.  That ethical principle is still part of the Guidelines as of the filing of this case.

43.     For these reasons, Defendant's delivery charges are deceptive, unethical and unfair.

## NAMED PLAINTIFF ALLEGATIONS

44.     Plaintiff purchased checks from Deluxe and was unfairly, unethically and illegally overcharged for shipping and delivery.

45.     Plaintiff has a checking account with BMO Harris Bank in Chicago, Illinois.

46.     On or about February 10, 2015, Plaintiff ordered a box of Deluxe checks using Deluxe's website.

47.     Thereafter she received the checks at her home in St. Charles, Ill.  For those checks, she was charged $30.25.  That amount represented a charge for the box of checks of $22.25 and an $8.00 shipping and delivery fee.

48.     The amount charged for shipping and delivery had no reasonable relationship to, and, in fact, greatly exceeded, Defendant's costs incurred for shipping and delivery and constituted improper and unethical profit for Defendant.  Had Plaintiff ordered checks from Deluxe's Checks Unlimited website, she would have been charged only $3.45 for shipping and handling.

## CLASS ACTION ALLEGATIONS

49.     Pursuant to Fed. R. Civ. P. Plaintiff  seeks to represent the following Class:

> All citizens of the following states who purchased Deluxe checks from Defendant and were charged a fee for shipping or delivery: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Louisiana, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming, as well as the District of Columbia, within the period of the applicable statutes of limitations prior to the filing of this lawsuit and up to the date of certification

50.      This Class is divided into the following two sub-classes:

> All citizens of the following states who purchased Deluxe checks from Defendant and were charged a fee for shipping or delivery: Arkansas, California, Connecticut, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Vermont, Washington, West Virginia, and Wyoming and the District of Columbia within the period of the applicable statutes of limitations prior to the filing of this lawsuit and up to the date of certification ("Statutory Sub-Class").

> All citizens of the following states who purchased Deluxe checks from Defendant and were charged a fee for shipping or delivery:  Alabama, Alaska, Arizona, Colorado, Delaware, Georgia, Illinois, Iowa, Louisiana, Minnesota, Mississippi, Nevada, New York, North Dakota, South Dakota, Tennessee, Virginia and Wisconsin within the period of the applicable statutes of limitations prior to the filing of this lawsuit and up to the date of certification.  ("Common Law Sub-Class.")

51.     Excluded from the proposed Class are Defendant, its Officers, Directors, and employees, as well as employees of any subsidiary, affiliate, successors, or assignees of Defendant.  Also excluded is any trial judge who may preside over this case.

52.      The Class is believed to comprise many consumers, the joinder of whom is impracticable, both because they are geographically dispersed and because of their number.

53.     Class treatment will provide substantial benefits to the parties and the Court.  A well-defined commonality of interest in the questions of law and fact involved affect Plaintiff and the putative Class Members.  Common questions of law and fact include:

A.     Whether Defendant charged consumers an amount for shipping or delivery of checks;

B.     Whether the amount Defendant charged consumers for shipping or delivery of checks exceeded Defendant's actual costs for shipping or delivering the checks to consumers;

C.     Whether Defendant charged consumers for shipping or delivery of checks more than it paid for such shipping or delivery;

D.     Whether and, if so, how Defendant determined its costs for shipping or delivering checks to Illinois consumers;

E.     Whether Defendant's actions in charging more for shipping or delivery than its costs were unethical;

F.     Whether Defendant's actions in charging more for shipping or delivery than its costs violated the unfairness provisions of state statutes such as the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq*. and similar statutes of other states;

G.      Whether Defendant was unjustly enriched by charging more for shipping and delivery than its shipping and delivery costs;

H.      Whether Defendant should be required to pay Plaintiff's attorney's fees.

54.     Questions of law and fact common to members of the Class, some of which are set forth above, predominate over any questions affecting only individual members of the Class. The resolution of common questions will resolve the claims of both Plaintiff and the Class.

55.     Plaintiff's claims are typical of the claims of the proposed Class in that Plaintiff ordered checks from Defendant's website and was charged more for shipping or delivery of the checks than Defendant's costs.

56.     Plaintiff will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiff has no interests antagonistic to those of the Class.  Plaintiff has retained competent and experienced counsel in the prosecution of this type of litigation.

57.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy because members of the Class are numerous and individual joinder is impracticable.  The expenses and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually. Trial of Plaintiff's claims is manageable.

58.     This action is maintainable as a class action pursuant to Fed. R. Civ. P. 23.

**VIOLATION OF THE ICFA AND SIMILAR STATUTES OF OTHER STATES**

59.     Illinois' ICFA statute prohibits "unfair acts or practices … in the conduct of any trade or commerce …."  815 ILCS 505/2.

60.     In outlawing unfair acts or practices, the Illinois legislature adopted the Federal Trade Commission's interpretation of § 5(a)(a) of the Federal Trade Commission ("FTC") Act,

15 U.S.C. § 45(a):  "In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."  815 ILCS 505/2.

61.     In determining whether a practice is unfair in violation of Section 5(a) of the FTC Act, the FTC considers whether the practice is unethical.  *See FTC v. Sperry & Hutchinson Co*., 405 U.S. 233 at 244 n. 5.

62.     Accordingly, unethical practices are unfair under ICFA.

63.     In addition, under the FTC's  interpretation of the FTC Act, charging an amount for delivery that exceeds a merchant's costs violates Section 5(a).  In *In the Matter of Bill Crouch Foreign, Inc., d/b/a Bill Crouch Imports, Inc. (Formerly Mazda of Boulder, Inc.)*, 96 F.T.C. 111, 1980 WL 339028, the FTC entered into a consent order that prohibited a car dealer from violating the FTC Act by charging an amount for "Freight" that "exceeded respondent's actual outlays to third parties for the transportation of new automobiles."  *Id.* at *2.  By bringing that proceeding under Section 5(a) and entering into a consent order, the FTC showed that its interpretation of Section 5(a) is that such charges violate the Act.

64.     Defendant violated the ICFA by imposing unethical and unfair shipping or delivery charges that exceeded its actual costs and turned shipping and delivery into a profit center.

65.     The following states have consumer protection statutes that, like those of Illinois, prohibit unfair or unconscionable practices:

Arkansas:  ARK. CODE ANN. § 4-88-107, *et seq.*

California:  Cal. Bus. & Prof. Code § 17200 *et seq.*

Connecticut:  CONN. GEN. STAT. § 42-110b, *et seq.*

Florida:  Fla. Stat. § 501.201 *et seq.*

Hawaii:  HAW. REV. STAT. § 480, *et seq.*

Idaho:  IDAHO CODE § 48-601, *et seq.*

Kansas:  KAN. STAT. § 50-623, *et seq.*

Maine:  ME. REV. STAT. Tit. 5, § 205-A, *et seq.*

Maryland:  MD. CODE. ANN., COM. LAW § 13-101, *et seq.*

Nebraska:  NEB. REV. STAT. § 59-1601, *et seq.*

New Hampshire:  N.H. REV. STAT. ANN. § 358-A:1, *et seq.*

New Jersey:  N.J.S.A. § 56:8-1 *et seq.*

New Mexico:  N.M. STAT. ANN. § 57-12-1, *et seq.*

North Carolina:  N.C.G.S. §75-1.1, *et seq.*

Oklahoma:  OKLA. STAT. Tit. 15, § 751, *et seq.*

Oregon:  OR. REV. STAT. § 646.605, *et seq.*

Rhode Island:  R.I. GEN. LAWS § 6-13.1-1, *et seq.*

Vermont:  VT. STAT. ANN. Tit. 9, § 2451, *et seq.*

Texas:  Tex. Bus. & Com. Code § 17.50

Washington:  WASH. REV. CODE § 19.86.010, *et seq.*

West Virginia:  W. VA. CODE § 46A-6-101, *et seq.*

Wyoming:  WYO. STAT. ANN. § 40-12-101, *et seq.*

66.    The following states' statutes are among those that broadly prohibit unfair acts and practices: California, Connecticut, Florida, Hawaii, Illinois, Maine, Maryland, Nebraska, New Hampshire, North Carolina, Oklahoma, Rhode Island, Vermont, Washington, West Virginia, and Wyoming.

67.      The states of Arkansas, Idaho, Kansas, New Jersey New Mexico and Texas prohibit "unconscionable" conduct.

68.      Oregon also outlaws "unfair or deceptive conduct in trade or commerce," as well as "any unconscionable tactic in connection with the sale, rental or other disposition of real estate, goods or services."  Or. Rev. Stat. § 646.607(1) and 646.608(u).

69.      In addition to Illinois, the following states, by statute, state regulation or case law, expressly incorporate the FTC's and the courts' interpretations of Section 5 of the FTC Act into their consumer protection statutes:  California, Connecticut, Florida, Hawaii, Idaho, Maine, Maryland, Massachusetts, New Hampshire, North Carolina, Rhode Island, Texas, Washington, and West Virginia.

70.      The statutes of each of the states listed in this section of the Complaint provide consumers with a private right of action for the unfair and/or unconscionable acts and practices of Defendant.

## JURY DEMAND

71.      Plaintiff demands trial by jury on all issues so triable.

## COUNT I

## VIOLATIONS OF THE ICFA AND CONSUMER PROTECTION STATUTES OF OTHER STATES  (STATUTORY SUB-CLASS)

72.      Plaintiff hereby incorporates by reference the preceding allegations as if fully set forth herein.

73.      Section 2 of the ICFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent

that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce ….” 815 ILCS 505/2.

74.     Defendant is engaged in trade and commerce.

75.     Section 2 of the ICFA also provides:  “In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.” 815 ILCS 505/2.

76.     In determining whether a practice is unfair in violation of Section 5(a) of the FTC Act, the FTC considers whether the practice is unethical, and, accordingly, so do Illinois courts in determining whether a practice is unfair in violation of the ICFA.  *See Robinson v. Toyota Motor Credit Corp*., 201 Ill. 2d 403, 417-18, 775 N.E.2d 951, 961 (2002).

77.     In addition, under the FTC’s  interpretation of the FTC Act, charging an amount for delivery that exceeds a merchant’s costs violates Section 5(a).  In *In the Matter of Bill Crouch Foreign, Inc., d/b/a Bill Crouch Imports, Inc. (Formerly Mazda of Boulder, Inc.)*, 96 F.T.C. 111, 1980 WL 339028, the FTC entered into a consent order that prohibited a car dealer from violating the FTC Act by charging an amount for “Freight” that “exceeded respondent’s actual outlays to third parties for the transportation of new automobiles.”  *Id.* at *2.  By bringing that proceeding under Section 5(a) and entering into a consent order, the FTC showed that its interpretation of Section 5(a) is that such charges violate the Act.

78.     In addition to Illinois, the following states, by statute, state regulation or case law, expressly incorporate the FTC’s and the courts’ interpretations of Section 5 of the FTC Act into their consumer protection statutes: California, Connecticut, Florida, Hawaii, Idaho, Maine, Maryland, Massachusetts, New Hampshire, North Carolina, Rhode Island, Texas, Washington, and West Virginia.

79.     Defendant's actions are unethical and unfair because they violate the established ethical principle that delivery or shipping charges should bear a reasonable relationship to a seller's costs of delivery or shipping:

80.     These unfair acts and practices have been made unlawful under the consumer protection statutes of the states in the Statutory Sub-Class as enumerated above.

81.     Defendant has engaged in unfair acts or practices in violation of Arkansas Code § 4-88-101, *et seq.*

82.     Defendant has engaged in unfair acts or practices in violation of California Bus. & Prof. Code § 17200, *et seq.*

83.     Defendant has engaged in unfair acts or practices in violation of Connecticut Gen. Stat. § 42.110b, *et seq.*

84.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of District of Columbia Code § 28-3901, *et seq.*

85.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Florida Stat. § 501.201, *et seq.*

86.     Defendant has engaged in unfair acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*

87.     Defendant has engaged in unfair acts or practices in violation of Idaho Code § 48-601, *et seq.*

88.     Defendant has engaged in unfair acts or practices in violation of Illinois Compiled Statute 815 ILCS 505/2.

89.     Defendant has engaged in unfair acts or practices in violation of Indiana Code Ann. § 24-5-0-5.1, *et seq.*

90.     Defendant has engaged in unfair acts or practices in violation of Kansas Stat. § 50-623, *et seq.*

91.     Defendant has engaged in unfair acts or practices in violation of Kentucky Rev. Stat. § 367.110, *et seq.*

92.     Defendant has engaged in unfair acts or practices in violation of Maine Rev. Stat. Tit. 5, § 205-A, *et seq.*

93.     Defendant has engaged in unfair acts or practices in violation of Maryland Com. Law Code § 13-101, *et seq.*

94.     Defendant has engaged in unfair acts or practices in violation of Massachusetts Gen. L. Ch. 93A, *et seq.*

95.     Defendant has engaged in unfair acts or practices in violation of Michigan Stat. § 445.901, *et seq.*

96.     Defendant has engaged in unfair acts or practices in violation of Montana Code § 30-14-101, *et seq.*

97.     Defendant has engaged in unfair acts or practices in violation of Nebraska Rev. Stat. § 59-1601, *et seq.*

98.     Defendant has engaged in unfair acts or practices in violation of New Hampshire Rev. Stat. § 358-A:1, *et seq.*

99.     Defendant has engaged in unfair acts or practices in violation of New Jersey Stat. Stat. § 56:8-1, *et seq.*

100.    Defendant has engaged in unfair acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*

101.    Defendant has engaged in unfair acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

102.    Defendant has engaged in unfair acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*

103.    Defendant has engaged in unfair acts or practices in violation of Oklahoma Stat. Tit. 15, § 751, *et seq.*

104.    Defendant has engaged in unfair acts or practices in violation of Oregon Rev. Stat. § 646.605, *et seq.*

105.    Defendant has engaged in unfair acts or practices in violation of 73 Pennsylvania Stat. § 201-1, *et seq.*

106.    Defendant has engaged in unfair acts or practices in violation of Rhode Island Gen. Laws § 6-13.1-1, *et seq.*

107.    Defendant has engaged in unfair acts or practices in violation of South Carolina Code Laws § 39-5-10, *et seq.*

108.    Defendant has engaged in unfair acts or practices in violation of Texas Bus. & Com. Code § 17.50.

109.    Defendant has engaged in unfair acts or practices in violation of Utah Code § 13.11-1, *et seq.*

110.    Defendant has engaged in unfair acts or practices in violation of 9 Vermont § 2451, *et seq.*

111.    Defendant has engaged in unfair acts or practices in violation of Washington Rev. Code § 19.86.010, *et seq.*

112.    Defendant has engaged in unfair acts or practices in violation of West Virginia Code § 46A-6-101, *et seq.*

113.    Defendant has engaged in unfair acts or practices in violation of Wyoming Stat. Ann. § 40-12-101, *et seq.*

114.    The Defendant's unfair and deceptive acts and practices have directly, foreseeably, and proximately caused or will cause damages and injury to the Statutory Sub-Class.

115.    Defendant has engaged in the unfair and unethical acts and practices as described above willfully and knowingly.  Defendant's knowledge that the acts and practices enumerated above are unethical is shown by the fact that Defendant's management employee George Lawton is the chair of the committee of DMA that is responsible for promulgating, reviewing and revising the Ethical Guidelines that recognize these practices as unethical.

116.    Plaintiff and the Statutory Sub-Class suffered monetary damages in the amounts that Defendant charged for delivery that exceeded its actual costs of delivery.

117.    The ICFA allows "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person [to] bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper…."  815 ILCS 505/10a.

118.    Similarly, the statutes of the other states in the Statutory Sub-Class provide consumers with a private right of action for the unfair and/or unconscionable acts and practices of Defendant.

20

119.     Plaintiff and the members of the Statutory Sub-Class and all others similarly situated were injured and sustained ascertainable losses and damages in amounts to be proven at trial, as a direct and proximate result of Defendant's unfair acts and practices because, among other things, they had to pay Defendant more for shipping and delivery than Defendant's costs.

120.     WHEREFORE, Plaintiff and the Statutory Sub-Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT II

## UNJUST ENRICHMENT (COMMON LAW SUB-CLASS)

121.     Plaintiff incorporates by reference and re-alleges all preceding paragraphs of the Petition as though fully set forth herein.

122.     This Count is brought on behalf of the Common Law Sub-Class pursuant to the laws of Illinois, as well as Alabama, Alaska, Arizona, Colorado, Delaware, Georgia, Iowa, Louisiana, Minnesota, Mississippi, Nevada, New York, North Dakota, South Dakota, Tennessee, Virginia and Wisconsin.

123.     As is more fully set forth above, Defendant engaged in unfair and unethical acts or practices in connection with their charges for shipping and delivery.

124.     As an intended and expected result of their conscious wrongdoing as set forth in this Complaint, Defendant has profited and benefitted from payments made by Plaintiff and those similarly situated for the purchase of checks from Defendant.

125.     Defendant has voluntarily accepted and retained these payments with full knowledge and awareness that, as a result of its wrongdoing, Plaintiff and those similarly situated have paid more for shipping and delivery than is just.

126.     As a direct result of this conduct and the payments received for shipping and delivery, Defendant has been unjustly enriched.

127.     Plaintiff and the other members of the Common Law Sub-Class are entitled in equity to seek restitution of Defendant's wrongful profits, revenues and benefits, to the extent and in the amount, deemed appropriate by the Court to remedy Defendant's unjust enrichment, and such other relief as the Court deems just and proper.

128.     Allowing Defendant to retain the monies it received for shipping and delivery of checks above its costs of shipping and delivery would be unjust.

129.     WHEREFORE, Plaintiff and the Common Law Sub-Class pray for the relief requested in the Prayer for Relief set forth below.

## PRAYER FOR RELIEF

130.     WHEREFORE, Plaintiff, on her own behalf and on behalf of the members of the putative Class, prays for a judgment:

A.     Certifying the Class and Sub-Classes as defined herein;

B.     Entering an order appointing The Law Office of Richard S. Cornfeld and Leritz, Plunkert & Bruning, P.C. as counsel for the Class and Sub-Classers;

C.     Awarding Plaintiff and the Class compensatory damages, including a full refund of the amount of shipping and delivery charges they paid in excess of Defendant's actual costs of shipping and delivery;

D.     Awarding restitution to Plaintiff and the Class;

E.     Awarding punitive damages;

F.     Entering an injunction barring Deluxe from continuing the unfair and unethical practices alleged herein;

G.     Providing such further relief as the Court may deem fair and reasonable.

Respectfully submitted,

LAW OFFICE OF RICHARD S. CORNFELD

By: /s/ Richard S. Cornfeld
    Richard S. Cornfeld
    1010 Market Street, Suite 1720
    St. Louis, MO  63101
    (314) 241-5799
    (314) 241-5788 (Fax)
    rcornfeld@cornfeldlegal.com

    and

    /s/ Anthony S. Bruning
    Anthony S. Bruning
    Anthony S. Bruning, Jr.
    LERITZ, PLUNKERT & BRUNING, P.C.
    555 Washington Avenue, Suite 600
    St. Louis, MO 63101
    (314) 231-9600
    (314) 231-9480 Fax)
    ajbruning@leritzlaw.com

    *Attorneys for Plaintiff*